# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARBARA CROSBY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:08-CV-01793-RDP** |
| | } | |
| **BURLINGTON NORTHERN SANTA** | } | |
| **FE RAILWAY CORPORATION,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 20), filed August 31, 2009.  In support of its motion, Defendant filed a supporting memorandum of law (Doc. # 21) and an evidentiary submission (Doc. # 23).  Plaintiff has submitted her response to Defendant's motion (Doc. # 25), along with her evidentiary submission (Doc. # 26). Defendant has submitted its Reply.  (Doc. # 27).  The matter is now ripe for determination.

On September 28, 2008, Plaintiff filed a Complaint alleging two counts arising under Alabama law, Count I - negligence, and Count II - negligence per se - violation of statute.[1]  (Doc. # 1).  Plaintiff's claims arise out of an incident occurring on September 29, 2006, during which she was injured when a train started moving while she was crawling under its railcars.  (Docs. # 1 and # 25).  For the reasons set forth below, Defendant is entitled to judgment as a matter of law.

---

[1] More specifically, Plaintiff alleges that Defendant's conduct which injured Plaintiff was also in violation of Ala. Code § 10-19-31 and a city ordinance regarding the length of time a train can block a railroad crossing.

## I.      Relevant Undisputed Facts[2]

On or before September 29, 2006, 101 loaded coal cars had been set out on certain

Birmingham Southern Interchange Tracks.  (Doc. # 22-5.).  These tracks run parallel to the street

in front of Mt. Hebron Baptist Church located at 503 5th Street in the East Thomas community.

(Doc. # 22-8).  The coal cars had been placed on the tracks by Birmingham Southern crews to be

picked up by Defendant BNSF Railway Company, Inc. ("BNSF").  (Doc. # 22-5 at 1; Doc. # 22-3

at 39).

These cars were in a populous section of the Thomas Community where people had

crossed the train track for more than forty years.  (Doc. # 26-8; Doc. # 22-2 at 91). On September

29, 2006, a BNSF crew consisting of Engineer Monte Matthews, Conductor Jack Brake, Switch

Helper Chris Brand, and Trainee Zane Wideman was instructed to pull these cars from the

Birmingham Southern tracks to the BNSF Yard.  (Doc. # 22-1 at 28).   Brake and Matthews

traveled from the BNSF Yard to the coal cars on engines ((Doc. # 22-1 at 25; Doc. # 22-5 at 1),

while Wideman and Brand traveled by van.  (Doc. # 22-1 at 19; Doc. # 22-6 at 1; Doc. #  22-7 at

---

[2]  If facts are in dispute, they are stated in the manner most favorable to the non-movant.
*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  The analysis of the issues related
to this motion has been made more challenging than usual owing to several factors, including but
not limited to the fact that Plaintiff's Opposition to the Defendant's Motion for Summary Judgment
(Doc. # 25) fails to comply with the requirements of Appendix II to the Court's December 12, 2008
Scheduling Order.  Appendix II sets forth the court's standard requirements for briefing motions for
summary judgment.  Plaintiff's Opposition does not comply with Section (D)(2)(a) of Appendix II.
Although Plaintiff has presented her own claimed undisputed facts in accordance with Section
(D)(2)(b), her Opposition does not contain a section where she states whether she  admits or disputes
each of Defendant's claimed undisputed facts and, where she disputes those facts, provide a record
citation supporting that denial.  Despite these deficiencies in Plaintiff's briefing, the court prefers to
address the merits of the case, rather than strike Plaintiff's submissions for non-compliance.
However, Plaintiff's counsel should not expect this same leniency should he fail to follow standard
court procedures in the future.

1).  The tracks at issue are considered Birmingham Southern Railroad Yard Tracks and the crew's task on this day was considered a "yard job" or "yard switching."  (Doc. # 22-3 at 49).

The engines were moved to the Birmingham Southern tracks and were coupled to the cars located on Track 3 (the track nearest Mt. Hebron Baptist Church) (Doc. # 22-1 at 29).  Prior to moving, Brake released handbrakes, buckled air hoses, and ran air through the train to make sure "all the air works." (Doc. # 22-1 at 31).[3]

The cars coupled on Track 3 were then shoved to enable them to be coupled with additional cars on Track 1.  (Doc. # 22-1 at 36-37; Doc. # 22-6 at 2).   After again releasing handbrakes, coupling the air hoses, and building up air in these additional cars, the cars were pulled toward the BNSF Yard to a point where they could be shoved  toward yet more cars located on another track.  (Doc. # 22-1at 39; Doc. # 22-5 at 3; Doc. # 22-6 at 2).  Again, the handbrakes were released, the air hoses buckled and air was built up in the hoses with these additional cars.  (Doc. # 22-1 at 39; Doc. # 22-5 at 3; Doc. # 22-6 at 2).

Once all 101 cars were coupled and ready for movement, Wideman and Brand were relieved to return to the yard. (Doc. # 22-1 at 39;  Doc. # 22-6 at 2; Doc. # 22-7 at 2).  At that point, Brake was approached by Forrest Winters, Youth Minister at Mt. Hebron Baptist Church, who informed him that someone had been injured.  (Doc. # 22-1 at 21, 39; Doc. # 22-8).

Winters had observed the railcars moving at a slow rate of speed.  (Doc. # 22-8).  At that time, Plaintiff and another individual were standing on the opposite side of this track with moving cars in-between.  (Doc. # 22-8).  Winters observed the railcars stop for a short period of

---

[3] After coupling the cars, but before moving them, it is necessary to allow a sufficient application of air from the engine to the rear car to allow for proper braking and train movement, a process which takes several minutes.  (Doc. # 22-5 at 2).

time when Plaintiff began to crawl under one of them.  (Doc. # 22-8).  While Plaintiff was crawling under the railcar, the train began to move and plaintiff's foot/ankle was injured. (Doc. # 22-8).

Plaintiff had crawled under trains without incident before this occasion.  (Doc. # 22-2 at 149-151).  She testified that she generally waits a while before crawling under because of her fear that the train will move.  (Doc. # 22-2 at 151).  Plaintiff further testified that she has heard about people being injured crawling under railcars.  (Doc. # 22-2 at 153).  Plaintiff testified that, on this occasion, she waited for more than 30 minutes for the train to move before she began to crawl under it and, while she was crawling under it, it moved and her leg was injured.  (Doc. # 22-2 at 91, 132-133).  Before crawling under the train herself, Plaintiff observed someone else do the same thing.  (Doc. # 22-2 at 91, 132-133).  Notably, Plaintiff saw that the engine was attached to the train before she crawled under it.  (Doc. # 22-2 at 137-140, 179-81).  After she was injured, Plaintiff testified that could see a man in the engine.  (Doc. # 22-2 at 137-140, 142).  He was approximately one railcar length away.  (Doc. # 22-2 at 137-140, 42).  However, before the accident, she did not try to flag him down or get his attention in any way.  (Doc. # 22-2 at 182).

Defendant has a General Code of Operating Rules which, along with federal regulations and a city ordinance, prohibits blocking an intersection or crossing for more than ten minutes when engaged in switching activities or for more than an hour.  (Doc. # 26-4 at 15; Doc. # 26-2).  Defendant's regulations also require that a horn or whistle be blown in switching operations.  (Doc. # 26-4).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

### III.  Discussion

After careful review of the Rule 56 record, the court concludes that Defendant's summary judgment motion is due to be granted.

### A.  Plaintiff's Negligence Claim is Barred as a Matter of Law by Plaintiff's Contributory Negligence.

"'Contributory negligence is an affirmative and complete defense to a claim based on negligence. In order to establish contributory negligence, the defendant bears the burden of proving that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger.'" *Serio v. Merrell, Inc.*, 941 So.2d 960, 964 (Ala. 2006) (quoting *Ridgeway v. CSX Transp., Inc.*, 723 So.2d 600, 606 (Ala. 1998)). "Questions of contributory negligence and assumption of the risk are normally questions for the jury. ... [However,] when the facts are such that all reasonable persons must draw the same conclusion[,] contributory negligence become[s] a question of law for the court." *Gulf Shores Marine Indus., Inc. v. Eastburn*, 719 So.2d 238, 240 (Ala.Civ.App.1998) (citing *Ford v. Bynum Livestock & Comm'n Co.*, 674 So.2d 600 (Ala.Civ.App.1995) and *Wyser v. Ray Sumlin Constr. Co.*, 680 So.2d 235 (Ala.1996)).  On summary judgment, the Defendant must establish "by undisputed evidence a plaintiff's conscious appreciation of danger." *Horn v. Fadal Machining Centers, LLC*, 972 So.2d 63, 75 (Ala. 2007) (citing *H.R.H. Metals, Inc. v. Miller*, 833 So.2d 18 (Ala. 2002).

In this case, Plaintiff's own testimony shows that it is undisputed that she consciously appreciated the danger posed by crawling under the train.  Plaintiff testified that she had crawled under trains without incident before this occasion.  (Doc. # 22-2 at 149-151).  However, she also

testified about her practice of waiting before doing so because of her fear that the train might move while she is crawling under it.  (Doc. # 22-2 at 151).   Plaintiff testified that she had heard stories about people being injured crawling under trains.  (Doc. # 22-2 at 153).  Plaintiff's testimony also established that she was aware that there was an engine attached to the train.[4] This testimony, together with the fact that she nonetheless proceeded to crawl under the train establishes by undisputed evidence that: 1) Plaintiff had knowledge of the danger presented by what she was about to do; 2) she had an appreciation of the danger of her actions;[5] and 3) she failed to exercise reasonable care by proceeding to crawl under the train. *See Serio*, 941 So.2d at 964.  Therefore, Defendant has established by undisputed evidence its defense of contributory negligence.

However, even such direct testimony is not required to establish contributory negligence. "It is enough if the plaintiff understood, *or should have understood*, the danger posed." *Serio*, 941 So.2d at 965 (citing *Ridgeway*, 723 So.2d at 606) (emphasis added).  Defendant has made a prima facie showing of all the necessary elements of its affirmative defense of contributory

---

[4] Plaintiff's awareness of the engine is relevant in two respects.  First, it establishes that Plaintiff was aware that the train had  a power source attached to it by which it could be moved.  *See Atlantic Coast Line R. Co. v. Dickson*, 28 S.E.2d 879, 882 (Ga. App. 1944).  Second, as the engine is usually at the end of the train, it raises the pregnant question of why Plaintiff did not walk around the train, rather than crawling under it.  However, despite the presence of the engine, Plaintiff disputes that the end of the train was within sight.

[5] Defendant submitted evidence that, upon arrival at the emergency room, Plaintiff's blood and urine tests revealed the presence of drugs and alcohol.  However, Plaintiff denies drinking or taking any drugs on this date.  Specifically, Plaintiff testified that she was "aware of what [she was] doing" and that "nothing was clouding [her] judgement on the date of this accident."  (Doc. # 22-2 at 89).  The court must resolve this dispute in favor of Plaintiff's version of the facts.  But, ironically, Plaintiff's version of the facts leads to the Rule 56 finding that she was fully able to perceive her surroundings, was aware of the danger presented by crawling under the rail car, and failed to exercise reasonable care in doing so.

negligence.  And on this record, Plaintiff has failed to carry the burden that was then shifted to her and requires her to produce substantial evidence creating a genuine issue of material fact as to any of those elements. *See, Serio*, 941 So.2d at 965.  Therefore, summary judgment is due to be granted on Plaintiff's negligence claim.

> **B.      Plaintiff's Negligence Per Se - Violation of Statute Claim is Barred as a Matter of Law**

Plaintiff's second cause of action alleges that Defendant is guilty of negligence per se because it blocked a public crossing in violation of a city ordinance and a state statute.  Whether Defendant was in violation of the ordinance or the statute is in dispute.  However, even assuming for the sake of argument that Defendant was in violation, Plaintiff's claim still fails as a matter of law.   The Fifth Circuit's decision in *Key v. Southern Ry. Co.*, 46 F.2d 993 (5th Cir. 1931) is dispositive of this claim.[6]

In *Key*, a train was blocking a public crossing in Town Creek, Alabama.  *Key*, 46 F.2d at 993.  By blocking the crossing with its train, Southern Railway was apparently in violation of an ordinance and a statute prohibiting the obstruction of public crossings.  While the crossing was obstructed, Plaintiff and some of his family members were attempting to drive across the crossing in their automobile.  *Id.*  When they found the crossing blocked, Plaintiff got out of his car and walked to a point where he was within sight of the engine.  *Id.*  Plaintiff saw men in the engine cab and attempted to draw their attention by waving his handkerchief.  *Id.*   After receiving no response from the men in the engine, or any indication that they had seen him,

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Plaintiff attempted to climb through the railcars.  *Id.*  As Plaintiff was climbing through the railcars, the train suddenly moved without warning, injuring his foot such that it had to be amputated.  *Id.* at 994.  The Fifth Circuit concluded that Plaintiff's own negligence so far contributed to his injuries such as to "deprive him of any right to complain of others."  *Id.*  The court explained its rationale as follows:

> When plaintiff drove up to the crossing and found it blocked by a train attached to an engine, he knew that the train could be moved momentarily, and, with no assurance from anybody that the train would not be moved, he attempted to cross over the bumpers between the cars. Such a situation as then confronted plaintiff should have apprised any reasonably prudent and careful person that there was danger involved in such an undertaking. But he took the risk which, under the circumstances, was an obvious one, and he must bear the consequences of failure. *The fact that the defendant in obstructing the crossing was negligent of its statutory duty under the laws of Alabama and the ordinance of the town of Town Creek was not the direct cause of the injury*. It was simply the cause which induced the plaintiff to take the risk of what he did. In this undertaking he was guilty of culpable negligence, and so far contributed to his injuries as to deprive him of any right to complain of others.

*Key*, 46 F.2d at 994 (emphasis added).

The facts before this court are indistinguishable from the facts before the Fifth Circuit in *Key*.  Defendant's alleged violation of the ordinance and the statute were not the cause of Plaintiff's injury, it was merely what caused or induced Plaintiff to take the risk that she did. Because *Key* is binding precedent on this court, the same result is compelled.  Therefore, just as in *Key,* Plaintiff's contributory and culpable negligence deprives her of any right to recover from Defendant.

## IV.    Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. # 20) is due to be granted.  The court will enter a separate order granting the motion.

**DONE** and **ORDERED** this _____9th_____ day of September, 2010.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE